IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS RAMOS and KELLY SMITH,

      Plaintiffs,

                                        CV 08-1150-PK

                                        FINDINGS AND

v.                                      RECOMMENDATION

U.S. BANK NATIONAL ASSOCIATION,

      Defendant.

_____

PAPAK, Magistrate Judge:

      On March 14, 2007, Dennis Ramos, Kelly Smith, Ann Ross, and Maurita Prasad filed a

class action lawsuit against U.S. Bank National Association ("U.S. Bank") in the Northern

District of California.  The complaint in that action alleged the defendant's liability for violations

of federal, California, Washington, and Oregon wage and hour law.  The following day, March

15, 2007, the plaintiffs voluntarily dismissed their Northern District action.

Page 1 - FINDINGS AND RECOMMENDATION

On April 4, 2007, the same set of co-plaintiffs filed the lawsuit now before the court as a class action against defendant U.S. Bank in the Superior Court for the State of California for the County of Alameda, alleging the same wage and hour violations as were alleged in the first lawsuit. The action was removed to the Northern District of California effective June 7, 2007. The claims of plaintiffs Ramos and Smith, and those of the classes they putatively represent, were severed from those of their co-plaintiffs and transferred to the District of Oregon on September 30, 2008.

In this district, plaintiffs Ramos and Smith first amended their complaint on December 15, 2008, and again on January 12, 2009, in an effort to clarify which of the several claims asserted in the previous California proceedings would be pursued by the plaintiffs in these Oregon proceedings, and by which putative classes. As currently articulated, the operative complaint in this action now alleges on behalf of Ramos (and others similarly situated) claims for failure to pay wages and failure to pay overtime in violation of Oregon and federal statutory law, on behalf of Smith (and others similarly situated), a claim for failure to pay overtime in violation of Oregon and federal statutory law, and on behalf of both named plaintiffs (and the classes they putatively represent), a claim for failure to pay all wages due and owing at the end of employment in violation of Oregon statutory law. Each claim alleged on behalf of Ramos is expressly premised on U.S. Bank's alleged requirement that workers at its Portland, OR, U.S. Bank Tower location use an electronic timekeeping application that automatically truncated employee time entries, thereby systematically reducing the total work hours recorded for each employee. The claims alleged on behalf of Smith are expressly premised on U.S. Bank's alleged misclassification of its Oregon-based Sales and Service Managers as exempt from state and

federal overtime requirements.

Now before the court are U.S. Bank's motion for partial summary judgment (#184), in which it argues that plaintiffs are precluded by judgments in previously litigated cases from proceeding on a class or collective basis, and motions for more definite statement (#195), in which it argues that it cannot reasonably frame a responsive pleading to the plaintiffs' current complaint without clarification. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, I recommend that the motion for partial summary judgment be denied as to the class putatively represented by Ramos and granted as to the class putatively represented by Smith. The motions for more definite statement are denied in their entirety.

## LEGAL STANDARDS

### I.    Partial Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## II.    More Definite Statement

Federal Civil Procedure Rule 12(e) provides, in relevant part, as follows:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e).  Motions for more a definite statement are disfavored and are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted."  *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994). Where a responsive pleading can reasonably be framed, a motion for more definite statement should be denied.  *See*, *e.g.*, *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also* Fed. R. Civ. P. 12(e).  Similarly, where the detail sought by a motion for more definite statement is available through discovery, the motion should be denied.  *See Beery v. Hitachi Home Elecs. (Am.)*, 157 F.R.D. 477, 480 (C.D. Cal. 1993).

## FACTUAL BACKGROUND

## I.    Plaintiff Ramos

Ramos was employed by defendant U.S. Bank in its Portland, OR, U.S. Bank Tower location during the period from 2000 to 2005.  He asserts that, beginning in 2005, he and other employees at the Bank Tower location were required to enter their time into an electronic timekeeping application that automatically truncated time entries downwards to the nearest lower tenth of an hour.  He alleges that he worked periods of time that did not divide evenly into tenths of an hour during the year 2005, and in consequence was not fully compensated for his work

Page 4 - FINDINGS AND RECOMMENDATION

time.  He seeks unpaid overtime and wages, and seeks to represent a class of similarly situated

current and former hourly employees of U.S. Bank required to use such timekeeping software in

Oregon (the "truncation class").

## II.    Plaintiff Smith

Smith was employed by defendant U.S. Bank as a Sales and Service Manager ("SSM")

from at least April 2004 through April 2007.  She was at all material times classified as exempt

from state and federal overtime laws and regulations.  She alleges that she worked overtime

hours during the period of her employment, for which she was not properly compensated.  She

seeks her unpaid back overtime compensation, and seeks to represent a class of similarly situated

current and former SSM employees of U.S. Bank in Oregon (the "SSM class").

## III.    Prior Litigation

### A.    *McElmurry* Case

*McElmurry and Mrazek v. U.S. Bank Nat'l Assoc.*, Case No. 04-00642 (D. Or. 2004) was

filed May 11, 2004.  Plaintiffs' counsel herein served as counsel to the *McElmurry* plaintiffs.

Neither Ramos nor Smith was a party to the action.

#### 1.    Improper Classification Class

On August 22, 2005, the *McElmurry* plaintiffs moved for certification of a class of U.S.

Bank Sales and Service Managers improperly classified as exempt from May 11, 2001, through

May 11, 2004, and seeking unpaid back overtime compensation.  The motion was denied with

leave to refile following further discovery.  On May 8, 2006, the motion was filed again.

On October 3, 2006, Judge Hubel again denied the *McElmurry* class certification motion.

Judge Hubel found that the U.S. Bank Sales and Service Managers were not similarly situated to

Page 5 - FINDINGS AND RECOMMENDATION

one another, in that each U.S. Bank branch imposed different duties on its SSMs, and the managers of different branches spent widely varying amounts of time in the performance of particular job duties. Judge Hubel found that it would require a "highly individual inquiry" to determine the amount of time individual managers spent in particular duties and that, given the large number of potential numbers of the class (approximately 400 in Oregon) and of managerial duties (12-15), individualized inquiries would predominate over collective questions. Judge Hubel concluded that collective action would therefore be an inefficient mechanism for resolving the parties' dispute. On December 8, 2006, Judge Haggerty adopted Judge Hubel's Findings and Recommendation. The *McElmurry* plaintiffs subsequently unsuccessfully appealed the denial of their certification motion. The *McElmurry* final judgment dismissed the class/collective action claims with prejudice.

### 2.    Conversion Chart Class

In addition, the *McElmurry* plaintiffs sought to certify a class of U.S. Bank employees allegedly required by U.S. Bank to use a so-called "conversion chart" in manually entering a record of their hours worked onto weekly time reports. Allegedly, use of the conversion chart would systematically produce calculated work hour totals that were lower than actual work hour totals. The putative *McElmurry* conversion chart class was defined as:

> All non-exempt employees who work or worked for US Bank National Association who within the three year period prior to the filing of plaintiffs' complaint, **and recorded the hours they worked on a weekly time report which contains the rounding chart identical to those submitted by plaintiff McElmurry**.

*McElmurry v. US Bank Nat'l Ass'n*, Case No. CV-04-642-HU, 2004 U.S. Dist. LEXIS 15233 (D. Or. July 27, 2004) (emphasis supplied). Certification of the *McElmurry* conversion chart class

Page 6 - FINDINGS AND RECOMMENDATION

was denied after first being fully litigated.

   B.    *Lowdermilk* **Case**

On March 28, 2006, *Lowdermilk v. U.S. Bank Nat'l Assoc.*, Case No. 0603-03335 (Or.

Circ. Ct. 2006), was filed in the Circuit Court of Oregon, County of Multnomah.  Plaintiffs'

counsel herein served as counsel to the named plaintiff in *Lowdermilk*.

The named *Lowdermilk* plaintiff moved for certification of a class of nonexempt workers

employed by U.S. Bank between March 28, 2000, and March 28, 2006, who were required to use

a conversion chart substantially identical to the one at issue in *McElmurry* in reporting their work

hours by hand on weekly time reports.  The putative class was defined as:

> all . . . non-exempt employees, who worked for U.S. Bank within six years prior
> to the filing of the complaint, and **who reported their time on weekly time
> reports which contain the identical truncation chart which is attached hereto
> as exhibit 1**.

*Lowdermilk v. U.S. Bank Nat'l Assoc.*, Case No. 0603-03335 (Aug. 4, 2008), attached as Exh. 13

to McCracken Decl., Docket No. 187, at 1-2, (emphasis supplied).  The class certification motion

was denied.

In addition, the *Lowdermilk* court expressly considered evidence regarding the electronic

timekeeping program used by Ramos, the plaintiff herein, and specifically found that

Lowdermilk was not representative of a class that would include Ramos:

> [Lowdermilk]'s reply brief contained a few Weekly Time Reports for Mr. Dennis
> Ramos which [Lowdermilk] contends contained an automated formula that
> rounded down.  The record, however, establishes that Ms. Lowdermilk never used
> the version of the Weekly Time Reports that allegedly automatically rounded
> down.

*Id.* at 4.

## ANALYSIS

I.    **Issue Preclusion**

Defendant U.S. Bank argues that, because the *McElmurry* and *Lowdermilk* courts each

denied certification of classes similar to the putative classes herein, plaintiffs are precluded from

relitigating the class certification issue in these proceedings.

A.    **Preclusive Effect of *McElmurry***

The preclusive effect of *McElmurry*, a federal court action, is determined by reference to

the federal common law of issue preclusion.  *See Taylor v. Sturgell*, — U.S. —, 128 S. Ct. 2161,

2171 (2008)**.**

1.    **Federal Common Law of Issue Preclusion**

"Issue preclusion. . . bars successive litigation of an issue of fact or law actually litigated

and resolved in a valid court determination essential to the prior judgment, even if the issue

recurs in the context of a different claim."  *Taylor*, 128 S. Ct. at 2171 (citation, internal quotation

marks omitted).  Under the federal common law, issue preclusion applies where the following

three elements are established:

> (1) the issue necessarily decided at the previous proceeding is identical to the one
> which is sought to be relitigated; (2) the first proceeding ended with a final
> judgment on the merits; and (3) the party against whom collateral estoppel is
> asserted was a party or in privity with a party at the first proceeding.

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007), *quoting*

*Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).  It is not disputed that *McElmurry* ended

with a final judgment on the merits.  By contrast, each of the other elements is in dispute as to

both the putative truncation class and the putative improper classification class.

### a.      Identity of Issues

The courts of the Ninth Circuit consider four questions in determining whether issues are

identical for preclusion purposes:

> (1) is there a substantial overlap between the evidence or argument to be advanced
> in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of
> law as that involved in the prior proceeding?
>
> (3) could pretrial preparation and discovery related to the matter presented in the
> first action reasonably be expected to have embraced the matter sought to be
> presented in the second?
>
> (4) how closely related are the claims involved in the two proceedings?

*Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

### b.      Privity Requirement

In *Taylor*, the Supreme Court affirmed the general rule that final judgments have

preclusive effect only as to parties to the action in which the judgment issued:

> A person who was not a party to a  suit generally has not had a "full and fair
> opportunity to litigate" the claims and issues settled in that suit.  The application
> of claim and issue preclusion to nonparties thus runs up against the "deep-rooted
> historic tradition that everyone should have his own day in court."  *Richards* [*v.
> Jefferson County*], 517 U.S. [793,] 798 [(1996)] (internal quotation marks
> omitted).  Indicating the strength of that tradition, we have often repeated the
> general rule that "one is not bound by a judgment *in personam* in a litigation in
> which he is not designated as a party or to which he has not been made a party by
> service of process." *Hansberry* [*v. Lee*], 311 U.S. [32,] 40 [(1940)].  *See also, e.g.*,
> *Richards*, 517 U.S., at 798, 116 S. Ct. 1761, 135 L. Ed. 2d 76; *Martin v. Wilks*,
> 490 U.S. 755, 761, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989); *Zenith Radio Corp.
> v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S. Ct. 1562, 23 L. Ed. 2d 129
> (1969).

*Taylor*, 128 S. Ct. at 2171-2172.  However, the court noted six recognized exceptions to the

general rule against nonparty preclusion:  nonparties may be bound by a court judgment if (i)

they have agreed to be so bound, (ii) they are in a substantive legal relationship such that failing

to recognize preclusion would be unjust (*e.g.*, the bailor/bailee or assignee/assignor

relationships), (iii) "in certain limited circumstances, a nonparty may be bound by a judgment

because she was adequately represented by someone with the same interests who was a party to

the suit," *id.* at 2172, *quoting Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (internal

quotation marks and modifications omitted), (iv) they assumed control over the litigation in

which the judgment was rendered, (v) they are proxies for a party to the litigation in which the

judgment was rendered, or (vi) a special statutory scheme forecloses successive litigation by

nonparties. *See id.* at 2172-2173.

At issue here is the third enumerated category, adequate representation of a nonparty by a

party in prior proceedings. The *Taylor* court established unambiguously that nonparty preclusion

premised on adequate representation is subject to minimum due process limitations:

> A party's representation of a nonparty is "adequate" for preclusion purposes only
> if, at a minimum: (1) the interests of the nonparty and her representative are
> aligned, . . . and (2) either the party understood herself to be acting in a
> representative capacity or the original court took care to protect the interests of the
> nonparty. . . .

*Id.* at 2176 (citations omitted). "In addition," the court continued, "adequate representation

sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

. . ." *Id.* (citation omitted). "In the class-action context, these limitations are implemented by the

procedural safeguards contained in Federal Rule of Civil Procedure 23." *Id.*

Although the Ninth Circuit has not, the Seventh Circuit has expressly addressed issue

preclusion in the class certification context, holding that "[a] decision with respect to the class is

conclusive only if the absent members were adequately represented by the named litigants and

class counsel," *In re Bridgestone/Firestone, Tires Prods. Liab. Litig.*, 333 F.3d 763, 768 (7th Cir. 2003), and that "[a]bsent class members are bound [by a negative class certification decision] provided that the named representatives and their lawyers furnished adequate representation. . . ," *id.* at 769.

### 2.    Application as to the Putative Truncation Class

The *McElmurry* court decided on the merits that it would be inappropriate to certify a class of U.S. Bank employees who were required to use a specific, identified "rounding chart" when manually recording the hours they worked on a weekly time report.  Defendants argue that this decision precludes plaintiffs herein from requesting certification of a putative truncation class made up of employees required to enter their time into an electronic timekeeping software application that allegedly truncated the hours entered.

### a.    Identity of Issues

As noted above, a final judgment can have issue-preclusive effect in a subsequent proceeding only to the extent that an issue in the subsequent proceeding is "identical" to one necessarily decided in a prior one.  *Af-Cap*, 475 F.3d at 1086.  Also as noted above, in determining whether issues are identical for issue preclusion purposes, the courts of the Ninth Circuit consider the degree of overlap in the evidence and argument offered in the prior proceeding with that to be advanced in the later one, the extent to which the two proceedings are governed by the same rule of law, the extent to which pretrial preparation and discovery relating to the issue decided in the earlier proceeding would embrace the issue raised in the later one, and the relatedness of the claims raised in each action.  *See Resolution Trust*, 186 F.3d at 1116.  Here, the considerations weigh in favor of the conclusion that the two issues are not identical, and that

therefore *McElmurry* is without preclusive effect as to the certification of the putative truncation class.

Although the evidence advanced in connection with the *McElmurry* certification motion was, in a sense, thematically similar to the evidence that would be advanced in connection with a motion to certify the truncation class, because the *McElmurry* conversion chart class was strictly limited to employees using a particular, specified chart in recording their hours and because the members of the putative truncation class by definition did not use that chart, there would be no actual overlap between the two bodies of evidence. The relevant evidence in the prior proceeding was limited to employees using the specified conversion chart, the instructions those employees received in the use of the chart, and the actual practices of those employees when recording their time and relying on the chart. By contrast, the evidence that would be advanced in connection with a motion to certify the truncation class would be limited to employees using timekeeping software of the kind described in plaintiffs' complaint, the operation of that application, and the manner in which such employees entered their time into the software application. Thus, the evidence would not substantially overlap, and the first consideration weighs in favor of determining that the issues are not identical.

Identical rules of law are implicated in both proceedings. Thus, the second factor weighs in favor of finding the issues identical.

The third factor, like the first and for similar reasons, weighs in favor of finding the issues to be distinguishable. Trial preparation and discovery in *McElmurry* systematically falls short of embracing the evidence that would be presented in this action. The *McElmurry* conversion chart class was expressly limited to nonexempt employees utilizing a specified conversion chart not at

issue in the putative class in this action, whereas the putative truncation class is expressly limited to nonexempt employees utilizing a software application that was not at issue in the *McElmurry* action.  The *McElmurry* plaintiffs would not have been entitled, for example, to depose Ramos as to his timekeeping practices as they related to the timekeeping software at issue here, because such practices would necessarily have fallen outside the scope of the *McElmurry* claims.

Analysis of the final consideration does not add anything of substance to the inquiry. Claims in the two proceedings are closely related, in the sense that they rely on the identical rule of law and are premised on similar, mutually consistent factual allegations, but entirely unrelated, in that they are premised on wholly non-overlapping bodies of evidence.  The fourth factor is therefore a wash.

I conclude from the foregoing analysis that litigation of the truncation class certification issue is not precluded by the *McElmurry* conversion chart class certification decision, because the issues raised in the two proceedings are not identical.

### b.    Adequacy of Representation

Although not necessary for reaching the conclusion that the motion should be denied as to the putative truncation class, it is worth noting that Ramos, like the members of the class of U.S. Bank employees he seeks to represent, was not adequately represented by the *McElmurry* plaintiffs. *Taylor* established that one of the minimum requirements for adequate representation was that the party in the prior proceeding "understood herself to be acting in a representative capacity." *See Taylor*, 128 S. Ct. at 2176.  Although the named *McElmurry* plaintiff understood herself to represent a class, she expressly understood herself only to represent employees using precisely the same conversion chart that she used, a class of employees to which Ramos did not

Page 13 - FINDINGS AND RECOMMENDATION

belong.  Thus, she did not understand herself to represent Ramos or employees similarly situated to him.

Moreover, the Seventh Circuit's decision in *Bridgestone* persuasively holds that negative class certification decisions are binding as to absent class members, but in no way suggests that such decisions could be binding as to persons clearly outside the scope of the class at issue.  *See Bridgestone*, 333 F.3d at 768, 769.  Because Ramos was not a potential member of the *McElmurry* class, he was not adequately represented in that action and cannot be bound by its certification decision.

### 3.    Application as to the Putative SSM Class

The *McElmurry* court further decided on the merits that it would be inappropriate to certify a class of U.S. Bank Sales and Service Manager employees who were allegedly misclassified as exempt between May 11, 2001, and May 11, 2004.  Defendants argue that this decision precludes plaintiffs herein from requesting certification of a putative SSM class made up of SSM employees allegedly misclassified as exempt between March 14, 2004, and March 14, 2007.

### a.    Identity of Issues

As for the truncation class analysis, the first issue that must be determined is whether the two proceedings raise identical issues.  *See Af-Cap*, 475 F.3d at 1086.  This determination requires analysis of the four *Resolution Trust* considerations.  *See Resolution Trust*, 186 F.3d at 1116.  The first consideration – the degree of overlap between the evidence and argument offered in the prior proceeding and that to be advanced in the later one – weighs in favor of finding the issues identical.  The two classes are made up of employees with the same job title and subject to

Page 14 - FINDINGS AND RECOMMENDATION

the same misclassification.  The classes differ only in terms of their temporal extent, and overlap

for a period of approximately two months.  The record is devoid of evidence to suggest that there

was any material intervening homogenization of SSM job duties.  It therefore appears highly

likely that the overlap in evidence and argument to be advanced at the two proceedings would be

at least substantial.

The identical rules of law are implicated in both proceedings.  Thus, the second factor

also weighs in favor of finding the issues identical.

Pretrial preparation and discovery in *McElmurry* would have partially, but not wholly,

embraced the evidence that would be presented in this action.  The *McElmurry* class closed on

May 11, 2004, whereas the current putative class opened March 14, 2004.  Some discovery and

other pretrial preparation in *McElmurry* would therefore have been identical to discovery and

pretrial preparation required in these proceedings, but these proceedings would, in addition,

require discovery and other preparation beyond the scope of the prior proceeding.  The third

factor thus mitigates slightly in favor of finding the issues identical.

Finally, the claims in the two proceedings are clearly closely related, in that they

implicate identical rules of law, overlapping bodies of evidence, and closely related underlying

facts.  The fourth factor therefore mitigates in favor of finding the issues identical.

I conclude that the SSM class certification issues are identical across the two proceedings

for preclusion purposes.

## b.    Adequacy of Representation

As noted above, a nonparty to a prior decision is not subject to issue preclusion unless the

nonparty's interests were adequately represented in the prior decision.  As established in *Taylor*:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. . . .

*Taylor*, 128 S. Ct. at 2176 (citations omitted).

The named *McElmurry* plaintiffs at all material times understood that they had filed a class action lawsuit, and therein sought to certify a class of which Smith was unquestionably a member, in the sense that, had it been certified, she could have opted into it.[1]  Moreover, the *McElmurry* SSM plaintiff sought vindication of precisely the same rights which Smith now litigates.  Thus Smith's interests are wholly aligned with those of the *McElmurry* plaintiff, who clearly understood herself to represent the interests of Smith and others similarly situated.  *See, e.g.*, *Bridgestone*, 333 F.3d at 769 ("[a]bsent class members are bound [by a negative class certification decision] provided that the named representatives and their lawyers furnished adequate representation. . . .").  Because Smith's representation by the *McElmurry* plaintiff was adequate, *see Taylor*, 128 S. Ct. at 2176, she is bound by that court's negative class certification decision.

### 4.    Recommendation

For the foregoing reasons, I recommend finding that Ramos is not precluded by the final judgment in *McElmurry* from seeking certification of the putative truncation class.[2]  By contrast,

---

[1]  Smith was employed as an exempt SSM beginning in April 2004.  The *McElmurry* improper classification class closed May 11, 2004.

[2]  My recommendation that plaintiffs be found not precluded from requesting certification of the truncation class does not imply that it would be proper to certify the class.  At this time, issue preclusion is the only question before the court.  I express no opinion at this stage of proceedings as to whether the truncation class could properly be certified.

I recommend finding that Smith is precluded by the *McElmurry* decision from litigating the certification of the putative SSM class.

**B.    Preclusive Effect of *Lowdermilk***

The preclusive effect of *Lowdermilk*, a state court action, is governed by Oregon's law of issue preclusion.  *See Dodd v. Hood River County*, 136 F.3d 1219, 1225 (9th Cir. 1998).

**1.    Oregon Law of Issue Preclusion**

Under Oregon law:

If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

> 1. The issue in the two proceedings is identical.  . . .
>
> 2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.  . . .
>
> 3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.  . . .
>
> 4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.  . . .
>
> 5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.  . . .

*Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993) (citations omitted); *see also*, *e.g.*, *Barackman v. Anderson*, 214 Or. App. 660, 664 (2007) (same).

The Oregon courts have specified, with respect to the fourth enumerated requirement (that the precluded party was either a party to or in privity with a party to the proceeding in which the judgment was rendered), that "[a] person may be bound by a previous adjudication either by reason of being a party in the case, or by reason of *participation which is substantially equivalent*

*to having been a party*, or from having a legal relationship that is derived from one who was a

party." *State Farm Fire & Casualty Co. v. Reuter*, 299 Or. 155, 160-161 (1985) (emphasis

supplied). More specifically, "[i]ndividuals in privity with named parties include those who

control an action though not a party to it; *those whose interests are represented by a party to the*

*action*; and successors in interest to those having derivative claims." *Id.* at 161 (emphasis

supplied), *quoting Gaul v. Tourtellotte*, 260 Or. 14, 20 (1971).

### 2. Application as to the Putative Truncation Class

As in *McElmurry*, the *Lowdermilk* court decided on the merits that it would be

inappropriate to certify a class of U.S. Bank employees who were required to use a specific,

identified "truncation chart" when manually recording the hours they worked on a weekly time

report. Defendants argue that this decision precludes certification of the putative truncation

class, comprised of employees required to enter their time into a timekeeping software

application that allegedly truncated the hours entered.

Assuming without deciding that the Oregon courts would permit issue preclusion as

liberally as do the courts of the Ninth Circuit – limited only by the due process minima set forth

by the Supreme Court in *Taylor*, *supra* – because Ramos was not a party to *Lowdermilk* and his

interests were not represented by the named *Lowdermilk* plaintiff, he cannot be bound by the

negative class certification decision in that action.

The *Lowdermilk* plaintiff understood herself to represent a class of U.S. Bank employees

specifically defined as required to report their time manually on weekly time reports

incorporating a specific, identified chart that dictated how rounding operations were to be

performed. As the *Lowdermilk* court expressly found, in that capacity she could not represent

Page 18 - FINDINGS AND RECOMMENDATION

Ramos, whose time entries were recorded electronically, using timekeeping software. Thus, Ramos' interests could not have been represented in the Oregon action.

Moreover, although Ramos did participate in that action to the extent of submitting time reports for the court's consideration, his participation was not the substantial equivalent of being a party. As noted by the *Lowdermilk* court, "Ramos . . . chose[] to pursue his claim as a named plaintiff in another proposed class action" rather than casting his lot with the *Lowdermilk* plaintiff. *Lowdermilk*, attached as Exh. 13 to McCracken Decl., Docket No. 187, at 4.

For the foregoing reasons, litigation of the truncation class certification issue is not precluded by the *Lowdermilk* class certification decision.

## II.    More Definite Statement

Defendant U.S. Bank moves for an order that plaintiffs' complaint be amended to: (i) limit allegations of misconduct strictly to the alleged truncation and misclassification of Sales and Service Managers, and not to include other, more general allegations of violations of wage and hour law, (ii) define the purported classes strictly by reference to the allegations of improper truncation and misclassification, (iii) limit the purported truncation class expressly to employees working in U.S. Bank's Portland Bank Tower location, (iv) identify the specific electronic timekeeping application alleged to have effected the improper truncation of some employees' hours and limit the truncation class accordingly, (v) identify specific date ranges for the claims and purported classes, and (vi) specify that the claim for final wages is premised solely on the truncation/misclassification claims, and does not constitute an independent claim for additional unpaid compensation.

### A.    Motion No. 1:  Limit Claims to Truncation/Misclassification

U.S. Bank notes, correctly, that the plaintiffs' second amended complaint contains several general allegations of unpaid wages that could be construed as having a broader factual basis than the claims of improper truncation and misclassification elsewhere alleged with specificity. U.S. Bank is correct when it suggests that these broad, general allegations create a degree of ambiguity.  Nevertheless, the allegations of the complaint are not so indefinite that a response cannot reasonably be framed.  Moreover, the ambiguity could be remedied with a single request for admission.  The motion is therefore denied.

### B.    Motion No. 2:  Limit Classes to Truncation/Misclassification

The second amended complaint proposes three classes:  (i) an unpaid wage class (containing the employees affected by the alleged improper truncation), (ii) an overtime class (containing the employees affected by the alleged misclassification of SSMs) and (iii) a late payment class (apparently containing members of either of the first two classes who are no longer employed by U.S. Bank, and who therefore were not paid all compensation at termination of employment).  In addition, two "subclasses" are proposed, one comprised of truncation-affected employees, and one comprised of misclassification-affected employees.

U.S. Bank objects that the proposed classes are potentially broader than plaintiffs' counsel had informally represented they would be.  U.S. Bank is correct that the class definitions proposed in the second amended complaint are more broadly inclusive than are the asserted claims themselves.  Moreover, there is an inherent inconsistency in proposing a separate class for employees who have not been paid all final wages at the time of termination and in alleging a claim on behalf of all plaintiffs for failure to pay final wages.

Page 20 - FINDINGS AND RECOMMENDATION

Nevertheless, the allegations are not so vague that U.S. Bank cannot reasonably frame a response, and the plaintiffs are entitled to make broad claims if they believe the evidence will support them.  The motion is denied.

### C.    Motion No. 3:  Limit Truncation Class to Bank Tower Employees

The second amended complaint does not expressly limit the truncation class to employees employed at U.S. Bank's Portland Bank Tower, although the complaint alleges that the truncation claims arise out of U.S. Bank's reliance on software used at that location.  On that basis, U.S. Bank seeks amendment of the complaint.

The plaintiffs' purported failure to limit the scope of the truncation allegations to one specific business location does not render the complaint so indefinite that no response can reasonably be framed.  Moreover, it would be improper to require plaintiffs so to limit their allegations, at least in advance of discovery to determine which software applications were used in U.S. Bank's various locations, and their methods of operation.  The alleged wage and hour violation, if any, may have been more widespread than plaintiffs now believe, and they are entitled to frame their allegations to allow for that possibility.  The motion is denied.

### D.    Motion No. 4:  Specific Identification of Timekeeping Application

U.S. Bank notes, correctly, that the second amended complaint does not specifically identify the version of the timekeeping software responsible for the alleged truncation at issue here.  However, the plaintiff's failure to limit the scope of the truncation allegations to a specific version of the timekeeping application does not render the complaint so indefinite that no response can reasonably be framed.  Indeed, it would be improper to require plaintiffs so to limit their allegations, in that it is possible that more than one version of the application contained the

Page 21 - FINDINGS AND RECOMMENDATION

same alleged truncation feature.  The motion is therefore denied.

      **E.**      **Motion No. 5:  Specific Date Ranges for Claims/Classes**

U.S. Bank notes, correctly, that the second amended complaint does not expressly set forth opening or closing dates for the proposed classes, nor does it place temporal boundaries on the alleged violations of wage and hour law.  However, plaintiffs' failure to limit the scope of the allegations and the proposed class definitions temporally does not render the complaint so indefinite that no response can reasonably be framed.  At a minimum, the filing date of the complaint and the applicable statute of limitations can be used to generate effective beginning and ending dates.  Moreover, the purportedly omitted information is available through discovery. The motion is denied.

      **F.**      **Motion No. 6:  Limit Scope of Final Wages Claim to Truncation/Misclassification**

U.S. Bank's final motion seeks amendment of the complaint to specify that the fourth cause of action, for failure to pay all wages due and owing at the end of an employee's employment at the time of termination, is strictly premised on the previously alleged improper truncation and misclassification violations.  However, as currently articulated, the complaint clearly indicates that the fourth cause of action is so limited.  No amendment is necessary.  The motion is denied.

## CONCLUSION

For the reasons set forth above, I recommend that the motion for partial summary judgment (#184) be denied as to the class/collective action aspects of the claims alleged on behalf of plaintiff Ramos and the putative truncation class, and granted as to the class/collective

action aspects of the claims alleged on behalf of plaintiff Smith and the putative SSM class.

In addition, U.S. Bank's motions for more definite statement (#195) are denied in their

entirety.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review. Objections, if any, are due March 4, 2009. If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date. If objections are filed,

a response to the objections is due fourteen days after the date the objections are filed and the

review of the Findings and Recommendation will go under advisement on that date.

Dated this 18th day of February, 2009.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 23 - FINDINGS AND RECOMMENDATION