FILED

JUL 0 9 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS RAMOS and KELLY SMITH,

      Plaintiffs,

                                  CV 08-1150-PK

                                  OPINION AND
v.                                    ORDER

U.S. BANK NATIONAL ASSOCIATION,

      Defendant.

PAPAK, Magistrate Judge:

      On March 14, 2007, Dennis Ramos, Kelly Smith, Ann Ross, and Maurita Prasad filed a

class action lawsuit against U.S. Bank National Association ("U.S. Bank") in the Northern

District of California.  The complaint in that action alleged the defendant's liability for violations

of federal, California, Washington, and Oregon wage and hour law.  The following day, March

15, 2007, the plaintiffs voluntarily dismissed their Northern District action.

Page 1 - OPINION AND ORDER

On April 4, 2007, the same set of co-plaintiffs filed the lawsuit now before the court as a class action against defendant U.S. Bank in the Superior Court for the State of California for the County of Alameda, alleging the same wage and hour violations as were alleged in the first lawsuit.  The action was removed to the Northern District of California effective June 7, 2007. The claims of plaintiffs Ramos and Smith, and those of the classes they putatively represented,[1] were severed from those of their co-plaintiffs and transferred to the District of Oregon on September 30, 2008.

In this district, plaintiffs Ramos and Smith first amended their complaint on December 15, 2008, and again on January 12, 2009.  On February 18, 2009, these chambers recommended granting partial summary judgment in favor of U.S. Bank on the ground that plaintiff Smith was precluded from representing the putative sales and service managers class.  On May 20, 2009, Judge Brown adopted the recommendation without modification.  Subsequently, on March 5, 2010, the parties stipulated to the dismissal of plaintiff Smith and all claims alleged on her behalf.

Now before the court is Ramos's motion (#279) to certify the "truncation class" that Ramos putatively represents.  I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file.  For the reasons set forth below, the class certification motion is denied.

---

[1]  Ramos putatively represented a class of U.S. Bank employees employed at U.S. Bank's Portland, OR, U.S. Bank Tower location who used, in recording at least some of their time records, an electronic timekeeping spreadsheet that automatically truncated some of their time entries, thereby systematically reducing the total work hours recorded for each such employee below the number actually worked.  Smith putatively represented a class of U.S. Bank's Oregon-based Sales and Service Managers who were allegedly misclassified as exempt from state and federal overtime requirements.

## LEGAL STANDARD

Federal Civil Procedure Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007). The party seeking certification bears the burden of showing that the proposed class meets the requirements of Federal Rule of Civil Procedure Rule 23(a) and (b). *See id.* Although the district court accepts the substantive allegations of the complaint as true, the court also must consider the nature and range of proof necessary to establish those allegations and conduct a "rigorous analysis" to determine whether the claim satisfies Rule 23(a) requirements. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Thus, the court may look to supplemental information to "allow an informed judgment" on the Rule 23 requirements. *Id.* Although a court may need to inquire into the substance of a case to ascertain satisfaction of the Rule 23 requirements, the court should not "advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

## FACTUAL BACKGROUND

Ramos was employed by defendant U.S. Bank in its Portland, OR, U.S. Bank Tower location during the period from 2000 to 2005. He asserts that, apparently beginning in 2005, he and other employees in his work group at the Bank Tower location were required to enter their time into an electronic timekeeping spreadsheet that automatically truncated time entries downwards to the next lower tenth of an hour (specifically as opposed to *rounding* the time entries to the *nearest* tenth of an hour). He alleges that he worked periods of time that did not

divide evenly into tenths of an hour during the year 2005, and in consequence was not fully compensated for his work time.  He seeks unpaid overtime and wages, and seeks to represent a class of similarly situated current and former hourly employees of U.S. Bank employed at its Bank Tower location (the "truncation class"), including both persons from Ramos' own workgroup who are now known to have used the same spreadsheet as Ramos for recording their time entries, and persons from other work groups alleged on information and belief to have used the same or a similar spreadsheet.

Ramos asserts that he and his counsel have identified 86 current or former U.S. Bank employees who used timesheets that used a formula that truncated employee hours worked automatically.  No absent member of the class putatively represented by Ramos has yet filed a consent to join this action.

## ANALYSIS

As a preliminary matter, it is necessary to clarify the definition of the putative class under consideration.  First, U.S. Bank appears to argue that it could be appropriate to exclude from the putative class current or former U.S. Bank employees who used a timesheet that contained an automatically truncating formula, but which either was not identical to the one used by Ramos or contained a truncating formula that was not identical to the truncating formula contained in the timesheet used by Ramos.  However, under the proposed definition of the putative class, any current or former U.S. Bank employee who is or was employed at U.S. Bank's Bank Tower location who was compensated on an hourly (as opposed to salary) basis is a member of the putative truncation class if that employee recorded his or her time during any pay period while employed by U.S. Bank using a timesheet that incorporated a formula that automatically

Page 4 - OPINION AND ORDER

truncated time entries down to the next lower tenth of an hour (as opposed to rounding to the nearest tenth of an hour) without reliance on the agency of the user to perform the truncation operation. For purposes of this analysis, the superficial appearance of the spreadsheet is immaterial, as is the question whether the truncation formula incorporated into the timesheet is precisely identical to the formula incorporated into the timesheet used by Ramos. Any automatically truncating formula incorporated into the calculations performed by the timesheet without human intervention is sufficient for the timesheet to support inclusion in the putative class.

Second, Ramos argues that both under the proposed class definition and as a matter of law it should pose no obstacle to class certification that the putative class, as provisionally defined, would include members who had suffered no cognizable injury-in-fact. That is, Ramos argues that current or former U.S. Bank employees who used a timesheet that contained a truncating formula should be considered class members regardless of whether any of their time entries were ever actually truncated. However, it is clear that a claimant who has not suffered any injury-in-fact lacks Article III standing to bring a legal action. *See, e.g., Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). Moreover, "no class may be certified that contains members lacking Article III standing. . . . The class must therefore be defined in such a way that anyone within it would have standing." *Sanders v. Apple, Inc.,* 672 F. Supp. 2d 978, 991 (D. Cal. 2009), *quoting Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d. Cir. 2006); *see also, e.g.,* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FED. PRAC. & PROC. CIV. 3d § 1785.1 (2005) ("To avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court

Page 5 - OPINION AND ORDER

intervention").

For the foregoing reasons, I construe the putative truncation class as including all current or former U.S. Bank employees who (i) are or were employed at U.S. Bank's Bank Tower location, (ii) are or were compensated on an hourly (as opposed to salary) basis, (iii) recorded their time during any pay period while employed by U.S. Bank using any interactive, software-based timesheet that incorporated a formula that automatically truncated time entries down to the next lower tenth of an hour (as opposed to rounding to the nearest tenth of an hour) without reliance on the agency of the user to perform the truncation operation, and (iv) lost pay in consequence of the automatically truncating formula contained within the timesheet used.

The putative truncation class, so construed, may properly be certified only if the requirements of both Federal Civil Procedure Rule 23(a) and Federal Civil Procedure Rule 23(b) are satisfied with respect to the class. *See* Fed. R. Civ. P. 23.

## I.    Federal Civil Procedure Rule 23(a)

Federal Civil Procedure Rule 23(a) provides that plaintiffs may represent a class of similarly situated persons in a class action lawsuit only where:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A.      **Numerosity**

Federal Civil Procedure Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable" before a class may be certified.  Fed. R. Civ. P. 23(a)(1).  The courts of the District of Oregon have held that, within this District, "as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement."  *Wilcox Dev. Co. v. First Interstate Bank, N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (citation omitted).

As noted above, Ramos asserts that he has identified the timesheets of 86 current or former U.S. Bank employees that display indicia of automatic truncation.  U.S. Bank argues that the large majority of these – those submitted by all but 22 of the employees involved – did not incorporate (and could not have incorporated) any automatically truncating formula.  I have independently analyzed the documents submitted in support of the parties' respective positions, and provide the results of my analysis below.

Including Ramos, 34 U.S. Bank employees used a timesheet identical in appearance to the automatically truncating timesheet that Ramos used.  Of these employees, nine submitted no timesheets that evinced any upward or downward discrepancy from an accurate calculation of hours worked,[2] and three submitted no timesheets that evinced any downward discrepancy. These twelve employees clearly have no cognizable damages resulting from automatic truncation, and therefore lack standing to bring the putative class claims against U.S. Bank. Thus, of the 34 employees who used a timesheet superficially identical to the one Ramos used, at most 22 (including Ramos) are potential members of the putative class.

---

[2] Ramos does not appear to assert that these nine employees are members of the putative truncation class.

Of the 86 employees identified by Ramos, 27 submitted time records using what U.S. Bank refers to as "Time Report A."  U.S. Bank concedes that Time Report A was an electronically stored spreadsheet that contained formulas that automatically calculated hours worked on the basis of start and end times inputted by the employees who submitted them, but argues that these calculations incorporated a rounding rather than a truncating formula. However, the evidence submitted in support of this assertion is equivocal, in that the single electronic version of Time Report A that U.S. Bank has offered into the record shows signs of having been modified in March 2010, so that the formula it incorporates is not necessarily the formula incorporated into older versions of the spreadsheet.  Moreover, there is no evidence in the record to suggest that employees using Time Report A all used precisely the same version of the timesheet or that all versions of the timesheet incorporated the same formulae.  It is therefore necessary to examine the individual timesheets themselves to see whether any evince unambiguous indicia of truncation.

Of the 27 employees who used Time Report A, the timesheets of only seven[3] evince downward discrepancies of three or more minutes in any calculation of hours worked, suggesting that only truncation or human error can be responsible for the discrepancy.[4]  That the

---

[3]  Review of the timesheets submitted by the other 20 employees that have been offered into the evidentiary record provides no reason to conclude that these employees' time records were subject to automatic truncation.

[4]  As a matter of mathematical logic, downward discrepancies of one or two minutes may be caused by either truncation or rounding.  Downward discrepancies of three to five minutes, by contrast, may be caused either by truncation or by human error.  Human error cannot be excluded as a possible cause of a discrepancy because these spreadsheets permit the user to override calculations performed internally by the software application, and even to delete the formulas that perform the calculations entirely.

Page 8 - OPINION AND ORDER

discrepancies are more likely caused by human error than by truncation is suggested, but not

established, by the fact that these same seven employees submitted timesheets using Time Report

A that displayed upward discrepancies during pay periods other than those identified by Ramos

as displaying downward discrepancies of three or more minutes. However, because of the

possibility that these employees sometimes used a version of Time Report A that automatically

truncated and sometimes used a version that rounded to the nearest tenth of an hour, the record

does not foreclose the possibility that the seven employees who relied on Time Report A and

whose timesheets evinced downward discrepancies of three or more minutes could be potential

class members.

Of the 86 employees identified by Ramos, 31 submitted time records using what U.S.

Bank refers to as "Time Report B." U.S. Bank offers compelling evidence in support of its

position that Time Report B contained no formulas for the automatic calculation of hours

worked, but rather merely provided fields in which users could enter the results of their own

calculations. Ramos speculates that there could exist a spreadsheet with formulas for automatic

calculation that was superficially identical to Time Report B, but offers no evidence in support of

such speculation. Moreover, analysis of the time records submitted using Time Report B

provides no reason to conclude that any of these timesheets incorporated an automatically

truncating formula. I therefore find that none of the employees identified by Ramos are potential

members of the putative class as a consequence of their reliance on Time Report B.

Of the 86 employees identified by Ramos, two submitted time records using what U.S.

Bank refers to as "Time Report C." U.S. Bank offers compelling evidence in support of its

position that Time Report C, like Time Report B, contained no formulas for the automatic

Page 9 - OPINION AND ORDER

calculation of hours worked, but rather merely provided fields in which users could enter the results of their own calculations. Ramos speculates that there could exist a spreadsheet with formulas for automatic calculation that was superficially identical to Time Report B, but offers no evidence in support of such speculation. Moreover, analysis of the time records submitted using Time Report C strongly suggests that all discrepancies are accounted for by assuming that the employees performed rounding operations in accordance with a rounding chart that instructed users to round to the nearest tenth of an hour. I therefore find that none of the employees identified by Ramos are potential members of the putative class as a consequence of their reliance on Time Report C.

Finally, of the 86 employees identified by Ramos, one submitted time records using what U.S. Bank refers to as the "July 2004 Standard Report." U.S. Bank offers compelling evidence that the July 2004 Standard Report incorporated a formula that automatically rounded hours worked to the nearest tenth of an hour, and analysis of the July 2004 Standard Report timesheets in the record corroborates U.S. Bank's position. The discrepancies are consistent with rounding rather than truncation. I therefore find that none of the employees identified by Ramos are potential members of the putative class as a consequence of their reliance on the July 2004 Standard Report.

The foregoing analysis suggests a maximum potential class size of 29 members. The record contains no information as to where these employees reside, but the record establishes that all either work or until relatively recently worked in Portland, Oregon. Given the size of the putative class and the absence of information suggesting that the potential class members would have undue difficulty litigating in Portland, I conclude that Ramos has not met his burden to

Page 10 - OPINION AND ORDER

show that joinder would be impracticable here. In consequence, Ramos cannot meet his burden

to show that the numerosity requirement of Federal Civil Procedure Rule 23(a) has been satisfied

in connection with the putative truncation class.

### B.    Commonality

Pursuant to Federal Civil Procedure Rule 23(a)(2):

> A class has sufficient commonality "if there are questions of fact and law which
> are common to the class." Fed. R. Civ. P. 23(a)(2). The commonality
> preconditions of Rule 23(a)(2) are less rigorous than the companion requirements
> of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All
> questions of fact and law need not be common to satisfy the rule. The existence
> of shared legal issues with divergent factual predicates is sufficient, as is a
> common core of salient facts coupled with disparate legal remedies within the
> class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, it is clear that the same wage and hour rules would govern all class members'

claims. Moreover, for putative class members who were damaged by operation of an

automatically truncating spreadsheet formula, individual factual differences such as, *e.g.*,

differences among class members in timekeeping practices would be effectively irrelevant. I

therefore conclude that the commonality requirement is satisfied for the putative class at issue

here.

### C.    Typicality

Pursuant to Federal Civil Procedure Rule 23(a)(3):

> The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of
> the representative parties are typical of the claims or defenses of the class." Fed.
> R. Civ. P. 23(a)(3). Under the rule's permissive standards, representative claims
> are "typical" if they are reasonably co-extensive with those of absent class
> members; they need not be substantially identical.

*Hanlon*, 150 F.3d at 1020.

Here, Ramos asserts precisely the same wage and hour violations that, by definition, all putative class members have against U.S. Bank. In consequence, I conclude that the typicality requirement is satisfied for the putative class at issue here.

### D.    Representativeness

Pursuant to Federal Civil Procedure Rule 23(a)(4):

> To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee*, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

*Hanlon*, 150 F.3d at 1020.

Ramos offers evidence that he and his counsel are willing to prosecute the class members' claims vigorously and that there is no conflict of interest between Ramos and the putative class. U.S. Bank fails to rebut any of Ramos' evidence on this point. I therefore conclude that Ramos has met his burden to establish his adequate representativeness for purposes of the class certification inquiry.

## II.    Federal Civil Procedure Rule 23(b)

Federal Civil Procedure Rule 23(b) provides that a class action may only be maintained if at least one of the following three factors is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class

members that would establish incompatible standards of conduct for the
party opposing the class; or

> (B) adjudications with respect to individual class members that, as a
> practical matter, would be dispositive of the interests of the other members
> not parties to the individual adjudications or would substantially impair or
> impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply
generally to the class, so that final injunctive relief or corresponding declaratory
relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that a
class action is superior to other available methods for fairly and efficiently
adjudicating the controversy.  The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution
> or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy
> already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Here, Ramos argues only that the third factor (predominance of common

questions over individual questions of law and fact and superiority of class action over other

available methods) is applicable.

### A.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591,

623 (1997), *citing* 7A Wright, Miller, & Kane 518-519.

This analysis presumes that the existence of common issues of fact or law have

Page 13 - OPINION AND ORDER

> been established pursuant to Rule 23(a)(2); thus, the presence of commonality
> alone is not sufficient to fulfill Rule 23(b)(3).  In contrast to Rule 23(a)(2), Rule
> 23(b)(3) focuses on the relationship between the common and individual issues.
> "When common questions present a significant aspect of the case and they can be
> resolved for all members of the class in a single adjudication, there is clear
> justification for handling the dispute on a representative rather than on an
> individual basis."  Wright & Miller, supra, § 1778.  Settlement benefits cannot
> form part of a Rule 23(b)(3) analysis; rather the examination must rest on "legal or
> factual questions that qualify each class member's case as a genuine controversy,
> questions that preexist any settlement."  *Amchem*, 117 S. Ct. at 2249.

*Hanlon*, 150 F.3d at 1022.

Here, applicable wage and hour rules will apply uniformly to all truncated time "lost" by

putative class members.  Moreover, as noted above, the class definition as I have construed it

renders individual differences in timekeeping practices largely if not wholly irrelevant to the

analysis of U.S. Bank's liability for violation of applicable wage and hour law.  Finally, on the

*arguendo* assumption that U.S. Bank's liability were established, damages could be calculated for

all class members using uniform mathematical formulae.  There is no obstacle to resolution of all

class members' claims in a single adjudication.  I therefore conclude that Ramos has met his

burden to establish the predominance of common questions of law and fact over individual

questions.

### B.      Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the

objectives of the particular class action procedure will be achieved in the particular case."  *Id.* at

1023 (citation omitted).  "This determination necessarily involves a comparative evaluation of

alternative mechanisms of dispute resolution."  *Id.*

The alternate mechanisms of dispute resolution available to putative class members here

Page 14 - OPINION AND ORDER

include, at a minimum, both joinder and separate individual lawsuits.  As noted above, with a putative class comprised of no more than 29 members, joinder is not impracticable, and class action is not a clearly superior mechanism for handling the putative class members' claims than joinder would be.  I therefore conclude that Ramos has not met his burden to establish the superiority of class action procedures over the available alternative of joinder.

By contrast, although the availability of attorney fee shifting in favor of prevailing plaintiffs in wage and hour actions effectively mitigates the risk that any individual plaintiff with a claim against U.S. Bank might be unwilling to undertake an individual action, it would be an inefficient use of judicial resources for the court to hear 29 individual actions where all claims could be resolved in the context of a single action.  I therefore conclude that class action is superior to the alternative of multiple individual actions.

Because Ramos has not established that class action is superior to joinder for purposes of resolution of all putative class members' claims against U.S. Bank, the requirements of Federal

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 15 - OPINION AND ORDER

Civil Procedure Rule 23(b) have not been satisfied in connection with the putative truncation class.

## CONCLUSION

For the reasons set forth above, Ramos's motion (#279) for class certification is denied.

Dated this 9th day of July, 2010.

Honorable Paul Papak
United States Magistrate Judge